IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SIAKA TEJAN JALLOH, #360816 | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. RDB-12-1320 |
| | | |
| DOUGLAS MULLENDORE, *et al.* | * | |
| In their individual and official capacities | | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

### I. PROCEDURAL HISTORY

Siaka Jalloh ("Plaintiff") filed this 28-page Complaint pursuant to 42 U.S.C. § 1983 on April 30, 2012, concerning the conditions of his confinement while a pre-trial detainee at the Washington County Detention Center ("WCDC") from 2009 to 2010.  He names Sheriff Mullendore, Warden Van Evans, Sargent Ed Long, Lieutenant Rowe, Lieutenant White, Deputy First Class Knight, and Lisa Bakner as Defendants.  Plaintiff stated that upon his arrival at WCDC, he listed his practicing religion as Muslim.  He claimed, however, that Islamic services, programming and articles, i.e., prayer rugs, Qur'an, scented oils, and headgear, were not available at WCDC, which he alleged was "Islamophobic, hostile, and indifferent to Muslim inmates." (Compl. at pgs. 4-5).

Plaintiff additionally stated that his complaints to WCDC personnel regarding the inaccessibility of Islamic practices at WCDC were not adequately responded to and he was told that he was listed as a Christian, not a Muslim.  Plaintiff stated that he was informed that WCDC policy dictated that to be designated as a Muslim he would have to obtain letterhead documentation from a local or national religious authority indicating that his religious preference had changed from Christian to Muslim.  He contended that Warden Evans waived this requirement for him, but not for others.  Plaintiff also alleged that his Ramadan meal was not reinstated on or about August 23, 2009, and he was denied access to a Ramadan Jumu'ah group prayer service on August 28, 2009.  He

complained that his rights under the U.S. Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc - 1 (a). were violated.   (Compl. at pgs. 6-14).  Plaintiff seeks declaratory relief, compensatory and punitive damages, and costs.  (*Id*. at p. 15).

## II.  PENDING MOTIONS

Currently before the Court are Defendant Mullenmore's Motion to Dismiss (ECF No. 10), Defendants Bakner, Evans, Knight, Long, Rowe and White's Motions to Dismiss (ECF No. 16-18), and Plaintiff's Opposition and Request for Summary Judgment.   (ECF Nos. 28).   No hearing is deemed necessary.  *See* Local Rule 105.6. (D. Md. 2011).  For reasons to follow, Defendants' Motions to Dismiss shall be DENIED.

## III.  STANDARD OF REVIEW

Where a plaintiff proceeds without counsel, his filing is to be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

In considering a motion to dismiss under Rule 12(b)(6), a court " 'must accept as true all of the factual allegations contained in the complaint,' " and must " 'draw all reasonable inferences [from those facts] in favor of the plaintiff.' " *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011); *Nemet Chevrolet, Ltd. v. Consumerafairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009).

A complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007). A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause

of action," is insufficient under the Rule. *Id.* at 555. So, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (citation omitted).

A motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). Moreover, in resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain,* 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.,* 579 F.3d 380, 385–86 (4th Cir. 2009), *cert. denied,* — U.S. —, 130 S.Ct. 1740, 176 L.Ed.2d 214 (2010).

## IV.   DISCUSSION

There is no material dispute that Plaintiff was detained at WCDC from June 9, 2009 to January 7, 2010.  He seeks declaratory relief and monetary damages against the Sheriff and WCDC staff for alleged violations under 42 U.S.C. § 1983 and RLUIPA.  The thrust of his Complaint is that he was denied access to Islamic services, articles, and programming and that the policies as to Muslim observances substantively differed from those established for other religions.  Further, he particularly complains of an instance when he broke the Ramadan fast and was not placed back on the holiday meal observance plan per his request and an instance when he was denied access to a group Ramadan prayer service.

Defendants argue that they are immune from and are not subject to damage liability both as State officials and under the qualified-immunity doctrine.  They make various factual statements without supporting affidavits and do not address the fact that they have been sued in their individual capacities.

In his Opposition to Defendants' Motions to Dismiss and Request for Summary Judgment, Plaintiff identifies each Defendant's alleged action in regards to the welfare of detainees, as well as religious classification and programming. He reiterates his allegation that at his initial classification, he declared he was a practitioner of Sunni Islam and that Islam was absent "from the cocktail of Christian Denomination and non-denominational religious services [at WCDC.]" (ECF No. 28). Plaintiff again claims that in August of 2009, he was forced to break the Ramadan fast due to health reasons and WCDC personnel denied him his request for restoration of the Ramadan meal plan. He reiterates his complaint that in order to register as a Muslim, WCDC policy dictated that he be released and then designate himself as a Muslim at a future detention, and he was later informed that he had to obtain documentation from a local or national religious authority regarding his religious preference. Further, Plaintiff again claims that he was prohibited from attending a Ramadan religious service in August of 2009. He asserts that during the seven months of his WCDC detention, he was "denied a reasonable opportunity" to pursue "his faith comparable to the opportunity afforded fellow prisoners who adhere to Christianity." (*Id*.). Plaintiff asserts that Defendants neither address the violations, nor satisfied their burden of showing that their acts were the least restrictive means of furthering the unidentified compelling interest.

Section 3 of the RLUIPA provides as follows:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1) is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest.

Before RLUIPA, courts applied the First Amendment "deference" analysis found under *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) and *Turner v. Safley*, 482 U.S. 78 (1987). These

cases held that  incarceration leads to a limitation on many rights and privileges as may be warranted by valid penological considerations, *see O'Lone*, 482 U.S. at 348, and that a prisoner's right to free exercise of his religion must give way to regulations that are "reasonably related to legitimate penological interests."  *Id*. at 349; *cf. Turner*, 482 U.S. at 89.

Defendants' Motions shall be denied.  As indicated, they do not substantively provide a factual response to any of Plaintiff's claims by affidavits or record.   They are not entitled to dismissal of Plaintiff's complaint under the doctrine of sovereign immunity as it is not clear to the undersigned whether all Defendants, such as WCDC Classification Officer Lisa Bahkan are State employees.  In addition, the sovereign immunity doctrine has no place as to Plaintiff's claims against WCDC personnel in their individual capacities.

Further, Defendants have not demonstrated that they are entitled to qualified immunity. Under the doctrine of qualified immunity, government officials are not subject to liability for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  In *Saucier v. Katz,* 533 U.S. 194, 201 (2001), the Supreme Court established a rigid two-step sequence for determining a defendant's entitlement to qualified immunity. "First, a court must decide whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's allege misconduct." *Pearson v. Callahan,* __ U.S. __, 129 S.Ct. 808, 815-16 (2009) (citing *Saucier,* 533 U.S. at 201) (internal citations omitted).  Plaintiff alleges that he was prohibited from taking religious meals and services during Ramadan and was denied access to religious articles seemingly necessary to his practice of the Islamic faith.  These are clearly established rights and Defendants' unrefuted alleged conduct plainly constitutes a violation of those

rights.

## V.  CONCLUSION

For the aforementioned reasons, Defendants' Motions to Dismiss shall be denied.  Plaintiff's request for summary judgment shall be denied without prejudice.  The parties shall submit further briefing within 90 days of the entry date of this Order.  A separate Order follows.


Date:  December 19, 2012                  _____/s/_____
                                                      RICHARD D. BENNETT
                                                      UNITED STATES DISTRICT JUDGE